ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of --                              )
                                           )
Transdev Services, Inc.                    )    ASBCA Nos. 62654, 62655
                                           )
Under Contract No. CQ18068                 )

APPEARANCES FOR THE APPELLANT:        Dawn E. Stern, Esq.
                                      Brett Ingerman, Esq.
                                      Harry P. Rudo, Esq.
                                        DLA PIPER LLP
                                        Baltimore, MD

APPEARANCES FOR THE AUTHORITY:        Jon B. Crocker, Esq.
                                        Chief Counsel
                                        Washington Metropolitan Area
                                          Transit Authority
                                        Washington, DC

                                      Attison L. Barnes, III, Esq.
                                      Samantha S. Lee, Esq.
                                      Moshe B. Broder, Esq.
                                        Wiley Rein LLP
                                        Washington, DC

OPINION BY ADMINISTRATIVE JUDGE STINSON
ON RESPONDENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

        Pending before the Board is a motion to dismiss for lack of subject matter
jurisdiction filed by respondent, the Washington Metropolitan Area Transit Authority
(WMATA). Appellant, Transdev Services, Inc. (Transdev), submitted two claims to
WMATA in April 2020, pursuant to the Disputes clause of its contract. At the time
Transdev filed its appeals seeking review of its two claims, WMATA had yet to issue
a final decision on either claim. WMATA contends that the Board is without
jurisdiction to entertain these consolidated appeals on the theory that the Board has
jurisdiction to review only written final decisions. For the reasons stated below, we
deny WMATA's motion to dismiss.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

        1. On January 10, 2001, WMATA and the ASBCA entered into a
Memorandum of Understanding (MOU) pursuant to which "[t]he ASBCA shall

provide a forum . . . for administrative resolution under Authority contracts containing a 'Disputes' article for all appeals from final decisions of contracting officers issued under such contracts" (MOU between the ASBCA and the WMATA (January 10, 2001, extended in October 2007) at 1). The MOU provides that "[o]pinions rendered by the ASBCA involving appeals under Authority contracts shall be accepted by the Authority as final and conclusive" unless overturned by "a court of competent jurisdiction" (MOU at 2).

2. On August 2, 2018, WMATA awarded Transdev Contract No. CQ18068 (the Contract) in the amount of $53,197,947.21 (mobilization and three-year base period) for operation and maintenance of Metrobus service operating from WMATA's Cinder Bed Road Facility, located in Lorton, Virginia (R4, tab 58 at WT2055, WT2101).

3. Paragraph B of Article 32 of the Contract contains procedures governing a termination for convenience (R4, tab 58 at WT2254). Included within that paragraph are the following references to the Federal Acquisition Regulation (FAR):

> (f) If the parties disagree on the whole amount to be paid because of the termination, the Contracting Officer shall pay the Contractor the amounts that he or she determines as follows . . .
>
> . . . .
>
> (iii) A sum, representing profit on the items described in subparagraph (f)(2)(i) that the Contracting Officer determines to be fair and reasonable pursuant to Section 49.202 of the Federal Acquisition Regulation (FAR), in effect on the date of this Contract.
>
> . . . .
>
> (h) The cost principles and procedures of FAR Part 31 in effect on the date of this Contract, shall govern all costs claimed, agreed to, or determined under this article, except that the Authority shall not be obligated to pay interest, however represented, on any claimed costs.

(R4, tab 58 at WT2256-57)

4. Article 35 of the Contract contains a Disputes clause, which provides:

> Any dispute concerning a question of fact arising under or related to this Contract that is not disposed of by agreement, shall be decided by the Contracting Officer, who shall reduce his/her decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The Contracting Officer's decision shall be final and conclusive unless, within thirty (30) calendar days from the date of its receipt, the Contractor mails or otherwise furnishes to the Contracting Officer, a written notice of appeal addressed to the Authority Board of Directors. Such notice must indicate that an appeal is intended and must reference the decision and Contract number. The decision of the Board of Directors or its duly authorized representative for the determination of such appeals shall be final and conclusive, unless in proceedings initiated by either party for review of such decision in a court or board of competent jurisdiction, it determines that the decision was fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In any appeal under this article, the appellant shall be afforded an opportunity to be heard and offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of this Contract in accordance with the Contracting Officer's decision. The Armed Services Board of Contract Appeals (ASBCA) is the Board of Directors' authorized representative for final decisions on an appeal.
>
> > (a) This "Disputes" article does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in the Contract, however, shall be construed as making final, the decisions of the Board of Directors or its representative on questions of law.

(R4, tab 58 at WT2258-59)[1]

---

[1] The Contract's Disputes clause contains a section "(a)" but no section "(b)" (R4, tab 58 at WT2259). It appears that the Disputes clause, as formatted in the

3

5. WMATA's Procurement Procedures Manual, Section 19, entitled "Claims and Litigation Actions," "establishes the Authority procedures for processing and resolving contractor claims and disputes." Section 19-2, entitled "General," provides, in part:

> (a) The Authority shall promptly review and evaluate all contractor claims, and shall provide an objective appeals process to hear and render decisions on appeals taken from Final Decisions by the Contracting Officer.
>
> . . . .
>
> (b) *Responsibility*. The Contracting Officer is responsible for the review, evaluation, and determination of the merit of contractor claims. In making merit determinations, the Contracting Officer should obtain the advice from Authority technical and subject matter experts in the areas including, but not limited to: contracting, finance, law, contract audit, and engineering and construction. Determinations of Merit may be reviewed by the Office of General Counsel ("COUN") for legal sufficiency depending on the complexity and/or dollar amount of the claim as determined by the Contracting Officer and/or the Chief Procurement Officer.

(R4, tab 107 at WT5861 (Version 7.4, dated August 2017), tab 110 at WT6914 (Version 7.9, dated January 2020))

6. Appellant's complaint addresses two claims: (1) the alleged amount owed and invoiced "for the hours operated under the Contract and the method for calculating that amount" (the Invoicing Claim); and (2) alleged "misrepresentations made by WMATA during the procurement regarding the maintenance status of the bus fleet" (the Bus Maintenance Claim) (compl. ¶ 2). The complaint also includes two breach of contract counts, Count I, Breach of Contract - Pricing Dispute, and Count V, Breach of Contract - Maintenance Dispute (compl. ¶¶ 60-64, 82-86).

---

Contract, should have included a section "(a)" at the beginning of the first paragraph of the clause, and the second paragraph of the clause should have been identified as section "(b)" and not section "(a)." *See Delta Engineering, Inc.*, ASBCA No. 58063, 14-1 BCA ¶ 35,553 at 174,219-20 (containing Disputes clause with same language, but both a paragraph section (a) and section (b)).

4

*The Invoicing Claim*

7.  By letter dated October 29, 2019, to Mr. Daniel Smith, WMATA Contracting Officer, Mr. Michael Setzer, President Transit Division, Transdev North America, discussed "the methodology by which Transdev invoices WMATA for Transdev's fixed-route service."  Mr. Setzer stated "[b]ecause Transdev and WMATA have engaged in this discussion without resolution for a matter of months, we seek a decision from you pursuant to Article 35 of the legal terms governing Cinder Bed Road Bus Operations and Maintenance RFP CQ18068 . . . ."  (R4, tab 97 at WT5537) Mr. Setzer's letter did not specify the amount of the claim, stating instead that "WMATA has withheld approximately 20% of each invoice issued to it on the basis that Transdev should simply be invoicing only a fixed fee, not both the fixed and variable fees instructed during the procurement process."  Mr. Setzer requested that WMATA "make payment of the outstanding amounts owed for each invoice issued since the inception of the fixed-route service . . . ."  (R4, tab 97 at WT5538)

8.  By email dated October 29, 2019, Mr. Ted Koerth, Associate General Counsel, Transdev North America, provided Mr. Jon B. Crocker, Senior Counsel, WMATA Office of General Counsel, a copy of Mr. Setzer's October 29, 2019, letter (app. supp. R4, tab 2 at TDEV6-7).  Mr. Crocker responded to Mr. Koerth via email that same day, stating, "Ted, thank you for copying me.  I acknowledge receipt.  You should expect a formal decision on the claim within 60 days."  (App. supp. R4, tab 2 at TDEV6)  By email dated January 6, 2020, Mr. Koerth responded to Mr. Crocker's email stating, "Happy new year.  More than 60 days since our letter have now passed. Did I miss WMATA's response?  Please advise."  (*Id.*)

9.  By letter dated February 6, 2020, to Mr. John King, Regional Vice President of Transdev North America, Mr. Smith addressed the Invoicing Claim, stating:

> As you know the dispute over the proper invoice format
> has been affecting the WMATA payment to Transdev
> since December 30, 2018.  WMATA has decided to
> institute the terms of the contract (CQ18068) in processing
> all payments for the period December 30, 2018 through
> September 30, 2019.  Please refer to Schedule C of
> CQ18068, price schedule instructions.  The amount owed
> Transdev for the period December 30, 2018 through
> September 2019 is $997,194.79.

(R4, tab 98)

10. By letter dated April 22, 2020, to Mr. Smith, Mr. Setzer again addressed the Invoicing Claim, stating, "as of February 29, 2020, WMATA has withheld and owes Transdev a sum of $1,520,432 in fees withheld by WMATA without justification based apparently on WMATA's mistaken understanding of the invoicing requirements under the Agreement" (app. supp. R4, tab 4 at TDEV102). In closing, Mr. Setzer stated, "[w]e hereby request payment of this amount within 15 days of this letter. Please advise me if WMATA does not intend to comply with this request" (app. supp. R4, tab 4 at TDEV103).

11. By letter dated June 2, 2020, to Mr. Smith, Mr. Setzer stated:

> I write today on behalf of Transdev . . . to follow-up on my prior claim demanding payment of $1,520,432 under the terms of the Cinder Bed Road Bus Operations and Maintenance RFP CQ18068 . . . . As explained in that letter, Transdev disputes WMATA's refusal to pay the full fixed and variable costs contained in our invoices. Those costs are expressly provided for by the Agreement.
>
> Pursuant to the Disputes article of the Agreement, Article 35, the Contracting Officer is required to issue a written decision on the claim. To date, however, we have not received a response. Thus, unless we receive a written response from you by June 5, 2020, we will deem the claim denied and seek appropriate relief from the Armed Services Board of Contract Appeals ("ASBCA"). We sincerely value our ongoing relationship with WMATA and welcome the opportunity to amicably resolve this issue without the need to involve the ASBCA.

(R4, tab 104)

*The Bus Maintenance Claim*

12. By letter dated March 12, 2020, to Ms. Yvonne Manfra, WMATA Project Manager, Mr. Branden Matthews, Transdev Area Vice President, submitted documents requested by WMATA to substantiate alleged premature major system failures of the Cinder Bed fleet for which appellant claimed WMATA was responsible (app. supp. R4, tab 6; R4, tab 101). Mr. Matthews' letter stated, in part:

> Attached please find the master control spreadsheet and vendor invoicing associated with all of the major system failures and repairs listed on the control spreadsheet. The

6

> documentation is divided into three groups; Major Engine
> Work, Hybrid Drive /DPIM and Wiring Repairs activities.
>
> The Transdev team is available to answer any question on
> the documentation if further explanation or discussion on
> any individual failure or repair activity is needed.

(App. supp. R4, tab 6)

13. By letter dated March 17, 2020, to Mr. Matthews, Ms. Manfra, responded to Transdev's March 12, 2020 letter, stating that WMATA could not continue its review of the material submitted until appellant submitted additional information. Ms. Manfra stated that WMATA would "begin a thorough review of the data provided" once the deficiencies were corrected. (App. supp. R4, tab 3)

14. By letter dated March 30, 2020, Mr. Matthews responded to Ms. Manfra's March 17, 2020 letter, providing "additional documentation to substantiate major system failures" (app. supp. R4, tab 4a).

15. By letter dated April 28, 2020, Mr. Smith responded to Mr. Matthews's March 30, 2020 letter, stating:

> The Washington Area Metropolitan Transit Agency
> (WMATA) has received and preliminarily reviewed the
> materials submitted by Transdev alleging premature
> mechanical major systems failures on buses assigned to the
> Cinder Bed Road Project. In order to consider any
> reimbursement for the allegations of mechanical major
> systems failures, WMATA is requiring that Transdev
> submit a formal claim against the contract (CQ18068).

(R4, tab 101)

16. By letter dated April 30, 2020, Mr. Matthews responded to Mr. Smith's April 28, 2020 letter, summarizing appellant's previous submissions and stating, in part:

> While WMATA has not, to date, substantively disputed
> Transdev's position on these repairs, WMATA has
> requested in your letter dated April 28, 2020, that we
> submit this information and a corresponding request for
> reimbursement for these expenses to you subject to

Article 35 (Disputes) of Contract 18068. Please consider this correspondence as such a request.

We ask that you advise us within 30 days of this letter of your decision on the matter. If we do not receive a response within that timeframe, we will understand WMATA's silence to constitute a denial of this request for reimbursement subject to Transdev's right to file an appeal to the WMATA Board of Directors consistent with Article 35 of the Contract.

(R4, tab 102)

17. By letter dated May 15, 2020, Mr. Smith responded to Mr. Matthews's April 30, 2020 letter, stating, in part:

A claim must be supported by substantial evidence. To assist you with collecting the necessary information to evaluate your position, WMATA has prepared a spreadsheet to identify areas where supporting documentation is required. Please complete the attached spreadsheet with as much information as is reasonably available and return it within thirty (30) days. This spreadsheet will form both the basis of your claim as well as supply the required diligence to enable an amicable resolution.

Alternatively, you may proceed from the bare allegations in your letter. The letter suggests but does not present a formal claim against the contract. For any claim in excess of $100,000, WMATA requires the vendor to submit a formal certification in accord with 41 USC 7103 and FAR 33.207. If you wish to proceed with a claim and without substantial evidence, then please simply complete the certification and resubmit.

Kindly return the requested evidence and/or a certified claim. Upon receipt, you are entitled to receive a Contracting Officers' Final Decision within sixty (60) days pursuant to the Disputes Clause of Contract CQ18068.

(R4, tab 103A)

18. By letter dated June 12, 2020, Mr. Matthews responded to Mr. Smith's May 15, 2020 letter, stating, in part:

> In response to your letter of May 15, 2020 asking for additional evidence, Transdev has completed the WMATA-prepared spreadsheet with as much information as is available. Some of the earliest repairs are documented with receipts but do not have a Maximo work order because Transdev maintenance staff access to Maximo was not provided by WMATA until well after commencement of operations by Transdev. The attached WMATA-created spreadsheet, in conjunction with the information already provided by Transdev, form the basis for our claim for reimbursement of $749,201.77 in maintenance costs associated with premature failures of major components on the fleet assigned to Contract CQ18068.
>
> We look forward to receiving Contacting Officers Final Decision as outlined in Disputes Clauses of Contract CQ18068 within sixty (60) days.

(R4, tab 105A)

*Transdev's August 7, 2020 Submission Regarding Both Claims*

19. By letter dated August 7, 2020, to Mr. Smith, Mr. Justin T. Augustine, III, North East Regional Vice President, Transdev North America, provided a detailed summary of both claims pending with WMATA (R4, tab 106A at WT5551, WT5559). In concluding his letter, Mr. Augustine stated, in part:

> . . . Transdev is entitled to a total payment of $2,475,900.80, for its above two claims. Pursuant to the Disputes article of the Contract, Article 35, the Contracting Officer is required to issue a written decision on the above claims. To date, however, we have not received a response to our previously-submitted claims on these issues. See Exhibits A, B, E, and F. Thus, unless we receive a written response from you by August 21, 2020, we will deem the

> claim denied and seek appropriate relief from the Armed
> Services Board of Contract Appeals ("ASBCA").

(R4, tab 106A at WT5556)[2]

20. Mr. Augustine's August 7th letter included the claim certification previously requested by WMATA in its May 15th letter, although Mr. Augustine noted that the Contract Disputes Act (CDA), 41 U.S.C. § 7103, does not apply to the Contract and the Contract did not incorporate the certification requirement set forth in FAR 33.207 (*id.*). Mr. Augustine stated:

> Because the Contract Disputes Act does not apply to the
> Contract, nor does the Contract incorporate FAR 33.207,
> there is no basis for the 60-day period set forth in the
> Contract Disputes Act to begin upon the submission of the
> certification included with this letter. To the extent
> WMATA disagrees, please inform us by August 14, 2020,
> of the basis for that disagreement so that we may evaluate
> WMATA's position prior to filing an appeal with the
> ASBCA.

(*Id*. at n.4)

21. WMATA has not issued a final decision on appellant's claims (WMATA mot. at 2). WMATA states in its motion that "the Contracting Officer for this Contract continues to assess Transdev's August 7 claim and intends to issue a written decision in response" (WMATA mot. at 4 n.3). Transdev states that it was informed by WMATA that it "did not intend to issue a written decision on either claim and told Transdev that the only way to have the claim reviewed would be to file an appeal with the ASBCA" (app resp. at 2 (citing compl. ¶ 18)).

22. By letter dated August 26, 2020, appellant filed its notice of appeal with the Board, based upon the "Contracting Officer's Deemed Denial of Transdev's Claims." The Board docketed the Invoicing Claim as ASBCA No. 62654 and the Bus Maintenance Claim as ASBCA No. 62655.

---

[2] Appellant characterizes its August 7th submission as "another follow-up letter to the WMATA Contracting Officer . . . incorporating its prior letters and, once again, requesting a Contracting Officer decision" (app. resp. at 3).

## DECISION

### I. Burden of Proof

Transdev, as the proponent of our jurisdiction, bears the burden of establishing the Board's subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993). Pursuant to the Board's agreement with WMATA, we have "authority to resolve appeals from the decisions of WMATA contracting officers pursuant to the provisions of the Disputes clause of WMATA contracts." *Delta Engineering*, 14-1 BCA ¶ 35,553 at 174,222. Our jurisdiction to entertain Transdev's appeals does not arise pursuant to the CDA, 41 U.S.C. §§ 7103-7109. *Cubic Transportation Sys.*, ASBCA No. 57770, 12-2 BCA ¶ 35,063 at 172,233.

### II. The Contract's Disputes Clause Permits Us To Consider Breaches of Contract

The Contract's Disputes clause grants the WMATA contracting officer authority to decide "(a)ny dispute concerning a question of fact arising under or related to this Contract" (SOF ¶ 4). Likewise, the Disputes clause grants the ASBCA, as the WMATA Board of Directors' authorized representative for final decisions on an appeal, the authority to decide "(a)ny dispute concerning a question of fact arising under or related to this Contract" (*id*.).[3]

The Board has interpreted the WMATA Disputes clause as authorizing the ASBCA to assert jurisdiction to consider claims alleging breach of contract. *Cubic Transportation Sys.*, 12-2 BCA ¶ 35,063 at 172,234. Specifically, we held:

> WMATA's Disputes clause is now an "all disputes" clause that provides new authority for the Board to consider breach of contract claims in WMATA contracts. This does not mean that the CDA applies to WMATA's contracts, it does not. It simply means that WMATA's revised Disputes clause confers authority on the Board to consider "all disputes" including breach of contract.

*Id*. Appellant's complaint here seeks relief for breach of contract (SOF ¶ 6).

---

[3] A previous version of the Disputes clause set forth in earlier WMATA contracts granted authority to decide only disputes concerning questions of fact arising under the contract. *Cubic Transportation Sys.*, 12-2 BCA ¶ 35,063 at 172,233 (discussing previous version of disputes clause and the subsequent addition to Disputes clause of the phase "or related to").

11

III. The Contracting Officer's Failure To Issue a Decision in a Reasonable Time Violates the Disputes Clause

A. The Disputes Clause Requires a Timely Decision By the Contracting Officer

The disputes clause states that disputes "shall be decided by the Contracting Officer, who shall reduce his/her decision to writing" (SOF ¶ 4). Accordingly, pursuant to the Disputes clause, issuance of a written decision on a claim is not discretionary with WMATA, rather, the contracting officer "shall" decide and "shall" issue a written decision (*id.*). A contracting officer who fails to decide the claim and issue a written decision breaches WMATA's contractual duty as specified in the Disputes clause and creates a breach of contract over which we have jurisdiction. *Cubic Transportation Sys.*, 12-2 BCA ¶ 35,063 at 172,234 (ASBCA has jurisdiction to consider breach of contract claims). Of course, the Disputes clause here fails to provide a specific time frame in which the contracting officer "shall" issue the decision, and it is that failure which has led to the current dispute.

Inherent in the contractual obligation to issue a written decision, as set forth in the Disputes clause, is the notion that the decision will be issued within a reasonable time after submission of the claim.[4] We have found jurisdiction in appeals not involving the CDA where the contracting officer failed to issue a decision within a reasonable time. *Keith L. Williams*, ASBCA No. 46068, 94-3 BCA ¶ 27,196 at 135,551 (jurisdiction to consider appeal based upon Disputes clause and pre-CDA authority to entertain appeal from contracting officer's constructive denial after more than two months inaction on contractor's claim).

In *Mid-America Officials Ass'n*, ASBCA No. 38678, 89-3 BCA ¶ 22,231, the contracting officer failed to issue a decision on appellant's claim and appellant requested the Board take jurisdiction pursuant to the CDA as a deemed denial. Because the CDA did not apply to that contract, we declined to grant appellant's request based upon the statute. Instead, we held that:

> Such relief, however, is available for appeals under the Disputes clause. The contracting officer had the claim for two months without issuing a decision. There is nothing in the record to explain or account for such neglect. In these circumstances, the failure to render the decision amounted

---

[4] WMATA's Procurement Procedures Manual requires WMATA to "promptly review and evaluate all contractor claims" and places responsibility on the contracting officer "for the review, evaluation, and determination of the merit of contractor claims" (SOF ¶ 5).

> to a denial of the claim, thereby affording us jurisdiction
> over this appeal.

*Mid-America Officials Ass'n*, 89-3 BCA ¶ 22,231 at 111,775 (citing *Titan Midwest Constr.*, ASBCA No. 24754, 80-2 BCA ¶ 14,622).

    *Professional Mgmt. Consulting Servs.*, ASBCA No. 61861, 20-1 BCA ¶ 37,638, cited by appellant (app. resp. at 6), also provides support for requiring a timely decision by the contracting officer under the Disputes Clause. *Professional Management* concerned an appeal of an unsigned final decision. Appellant filed its notice "outside the 30-day appeal period specified in the WMATA disputes clause," yet, as the Board noted, WMATA did not seek dismissal upon that basis. We held that the unsigned contracting officer's final decision was "not final and does not start the appeal period." *Professional Mgmt.*, 20-1 BCA ¶ 37,638 at 182,752 n.9 (citing *E-Sys., Inc.*, ASBCA No. 32033, 87-1 BCA ¶ 19,417 at 98,181; *J.J. Bonavire Co.*, ASBCA No. 32733, 87-2 BCA ¶ 19,908 at 100,715). Instead, we found jurisdiction to consider the appeal based upon the contracting officer's deemed denial, citing by comparison 41 U.S.C. § 7103(f)(5)). *Id.*

    B. <u>The Contracting Officer Has Failed To Act in a Timely Manner</u>

    Appellant submitted documentation regarding its Invoicing Claim by letter dated October 29, 2019, and requested payment pursuant to the Contract's Disputes clause (SOF ¶ 7).[5] By letter dated February 6, 2020, Mr. Smith addressed "the dispute over the proper invoice format," stating that "WMATA has decided to institute the terms of the contract (CQ18068) in processing all payments for the period December 30, 2018 through September 30, 2019. Please refer to Schedule C of CQ18068, price schedule instructions. The amount owed Transdev for the period December 30, 2018 through September 2019 is $997,194.79." (SOF ¶ 9)

---

[5] Appellant's October 29, 2019, letter, did not include, what is called in CDA parlance, a "sum certain." However, in non-CDA appeals, such as here, a contractor's claim is not required to state a sum certain for the Board to have jurisdiction to entertain the appeal. 48 C.F.R. § 2.101 (defining claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract"); *SUFI Network Servs.*, Appeal No. 55306, 07-1 BCA ¶ 33,535 at 166,122 ("[r]espondent cites no non-CDA or pre-CDA authority that this Board lacks jurisdiction to entertain a contractor claim that does not set forth an amount in a 'sum certain,' and none is known to the Board").

Appellant's opposition brief states that "Transdev first submitted its Invoicing Claim in writing on April 22, 2020," and in that claim "asserted that WMATA had wrongly withheld $1,520,432 owed to Transdev as of February 29, 2020" (app. resp. at 2 (citing compl. ¶ 37)). Arguably, appellant's October 29th letter could be considered a claim, inasmuch as it sought relief pursuant to the Disputes clause. Indeed, the Disputes clause here does not set forth any specific requirements for submission a claim (SOF ¶ 4).[6] However, neither party takes that position. Neither party likewise takes the position that Mr. Smith's letter dated February 6, 2020, was a final decision in response to appellant's October 29th letter, nor does the February 6th letter purport to be a final decision issued pursuant to the Disputes clause. (SOF ¶ 9)

Appellant submitted documentation regarding its Bus Maintenance Claim as early as March 12, 2020 (SOF ¶ 12). Appellant's subsequent letter dated April 30, 2020, specifically sought relief for its Bus Maintenance Claim pursuant to the Disputes clause (SOF ¶ 16). In response to appellant's April 30, 2020, Bus Maintenance Claim, WMATA stated that appellant's "claim must be supported by substantial evidence." WMATA provided appellant a spreadsheet seeking additional information, stating, "[t]his spreadsheet will form both the basis of your claim as well as supply the required diligence to enable an amicable resolution." WMATA informed appellant, "[a]lternatively, you may proceed from the bare allegations in your letter." WMATA asserted that the April 30th submission "suggests but does not present a formal claim against the contract" and that "any claim in excess of $100,000, WMATA requires the vendor to submit a formal certification in accord with 41 USC 7103 and FAR 33.207." WMATA instructed, "[i]f you wish to proceed with a claim and without substantial evidence, then please simply complete the certification and resubmit." (SOF ¶ 17)

The parties exchanged several pieces of correspondence subsequent to submission of appellant's claims, with appellant providing additional information and documentation as requested by WMATA (SOF ¶¶ 9-11, 13-18). Hoping to avoid further delay in the processing of its claims, appellant provided the requested certification, correctly noting, however, that it was not a contractual obligation (SOF ¶¶ 19-20). As of the filing of appellant's notice of appeal in August 2020, WMATA still had not issued a written decision on either claim (SOF ¶ 21).

WMATA argues that the Board lacks jurisdiction to consider appellant's appeals "[b]ecause Transdev has not exhausted the dispute resolution provisions prerequisite to the Board's jurisdiction under the Contract" (WMATA mot. at 3). We

---

[6] The Contract sets forth requirements for submission of termination for convenience claims, including citation to the FAR (SOF ¶ 3). However, the Contract contains no such reference to the FAR or specific claim requirements for other "dispute[s] concerning a question of fact arising under or related to this Contract" (SOF ¶ 4).

disagree.  In its recitation of the facts, WMATA recognizes that "Transdev and WMATA exchanged correspondence regarding many issues, including (1) Transdev's invoices under the Contract and (2) Transdev's request for reimbursement of $749,701.77 in maintenance expenses" (WMATA mot. at 2).  However, WMATA then asserts that "[o]n August 7, 2020, Transdev submitted a claim seeking a COFD on these issues, which are the subject of Transdev's Complaint" (*id.*).

As discussed above, the correspondence exchanged between WMATA and Transdev includes earlier versions of its claims, submitted several months before appellant's August 7, 2020, submission.  The August 7, 2020, letter was simply appellant's latest attempt to convince WMATA to issue a decision on its claims.  The fact that its August 7, 2020, submission also included a CDA certification (as requested by WMATA) does not somehow void or otherwise allow WMATA to ignore Transdev's earlier claims.  As both parties agree, the CDA does not apply to this Contract (WMATA mot. at 4; compl. ¶ 18), and the Disputes clause contains no requirement for a CDA-type certification of appellant's claims (SOF ¶ 4).

In support of its argument that "Transdev has not exhausted the dispute resolution provisions prerequisite to the Board's jurisdiction," WMATA cites *Larry D. Paine*, ASBCA No. 41273, 93-2 BCA ¶ 25,702, which WMATA states was "vacated on reconsideration based on new evidence" (WMATA mot. at 3 (citing *Paine*, ASBCA No. 41273, 93-3 BCA ¶ 26,161)).  Our decision in *Paine* does not support WMATA's position.  In that appeal, the Board initially dismissed appellant's "money claim for lost earnings and other damages as the result of the suspension" of its contract, because the Board determined that the claim had not been submitted to the contracting officer for a decision.  *Paine*, 93-2 BCA ¶ 25,702 at 127,862.  That is not the situation here - indeed, both of Transdev's claims were submitted to the contracting officer for a decision prior to the filing of its appeals (SOF ¶¶ 7, 16).  On reconsideration, the Board in *Paine* considered additional evidence, and, citing our inherent authority to modify our decisions to rectify obvious errors and prevent manifest injustice, determined that a claim had been submitted to the contracting officer, such that jurisdiction was proper. *Paine*, 93-3 BCA ¶ 26,161 at 130,044.

Appellant cites our decisions in *Mite Corp.*, ASBCA No. 18534, 73-2 BCA ¶ 10,312 and *Atlantis Constr. Corp.*, ASBCA No. 44044, 96-1 BCA ¶ 28,045, as jurisdictional support for its appeals here, wherein we found jurisdiction to consider non-CDA appeals in which the contracting officer had yet to issue a final decision (app. resp. at 5).  WMATA's reply brief argues that "[t]he circumstances here are not at all analogous to those in Transdev's cited authorities," noting that those appeals involved a longer length of time between submission of the contractors' claims, and the date appeals were filed.  (WMATA reply at 3)  Notwithstanding WMATA's argument, what *Mite Corporation* and *Atlantis Construction* teach, is that, in a non-CDA appeal, the length of time that must past between submission of a claim and

15

the filing of an appeal in which we have jurisdiction, is a factual determination to be made on a case-by-case basis. Where a reasonable time has passed between submission of the claim and the subsequent appeal, the Board has jurisdiction to consider the appeal.

Although not expressly applicable to this Contract, the CDA specifies a period of 60 days for the contracting officer to issue a final decision, or inform the contractor of a specific time within which a decision will be issued 41 U.S.C. § 7103(f)(2). Section 7103(f)(3) provides that:

> The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations prescribed by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of information in support of the claim provided by the contractor.

41 U.S.C. § 7103(f)(3). This approach, set forth in the CDA, represents a reasonable period of time for purposes of assessing WMATA's actions here, with regard to appellant's claims. Of note, WMATA's own counsel, Mr. Crocker, originally responded to submission of the invoice claim by stating that the contracting officer's decision would be issued in 60 days, indicating that to be a reasonable period of time (SOF ¶ 8).

We find that the length of time between claims-submission and filing of the appeals, April 22, 2020, to August 26, 2020 (Invoicing Claim) and April 30, 2020, to August 26, 2020 (Bus Maintenance Claim), is sufficient to authorize jurisdiction pursuant to the Disputes clause. Indeed both claims have been percolating between the parties much longer - since at least October 29, 2019, and March 12, 2020, respectively. A reasonable time having passed since submission to WMATA of appellant's claims, the Board has jurisdiction to consider Transdev's appeals of its two claims.[7]

WMATA's additional arguments are equally unavailing. In its reply brief, WMATA cites *Reese Industries*, ASBCA No. 29594-91, 84-3 BCA ¶ 17,628 at 87,860, wherein, according to WMATA, "the Board declined to take jurisdiction, even though a year had passed since the appellant submitted its claim and the

---

[7] Because we have jurisdiction to consider these consolidated appeals, we do not reach appellant's alternative request that the Board issue a stay of proceedings pending issuance of a final decision by WMATA, nor do we consider whether we have the authority to issue an order directing WMATA to issue a final decision (app. resp. at 6-7).

contracting officer had only requested additional information" (WMATA reply at 4). However, in that appeal, we concluded that the government's failure to issue a written decision was not unreasonable, stating "[w]e think it is entitled to be told something of cause and effect for the major categories of damage. We do not find that appellant has attempted to do that here but has lumped all into one substantial claim which, in its manner of presentation, borders on the frivolous." *Reese Industries*, 84-3 BCA ¶ 17,628 at 87,860. Our review of the correspondence submitted by the parties to-date suggests that appellant has provided sufficient information to WMATA to analyze the two claims and issue a decision. Moreover, we note that appellant's claims appear to be anything but "frivolous."

WMATA also argues that "Transdev cannot seek to impose a 'deemed denial' concept as if this were an appeal governed by the Contract Disputes Act because the Contract Disputes Act does not apply to WMATA or its contracts" (WMATA mot. at 4). However, we do not read appellant's complaint as basing our jurisdiction upon the CDA's statutory right to appeal a contracting officer's deemed denial of its claims. Rather, appellant's complaint identifies the Contract's Disputes clause and the MOU between WMATA and the ASBCA as the jurisdictional basis for the Board's jurisdiction (compl. ¶¶ 15-16). Although appellant's complaint recites several instances wherein it informed WMATA that it would deem its claims denied if Transdev did not receive a written response from the contracting officer by a certain date (compl. ¶¶ 18, 38-39, 55), appellant's complaint expressly recognizes that the CDA "does not apply to this dispute" (compl. ¶ 18). Rather, appellant's complaint is based upon a breach of contract (SOF ¶ 6).[8]

Even WMATA recognizes that the time to issue a final decision is not indefinite, stating as "not true" the idea that "there is absolutely no deadline for when that decision must be issued" (WMATA reply at 2). In its reply brief "WMATA simply argues that the plain terms of the Contract provide for a contracting officer's final decision before any appeal and do not impose a deadline for the issuance of that decision" (*id.*). However, WMATA's stating what is, in essence, a truism (that the Disputes clause contains no set deadline for issuance of a decision) does not address or excuse what happens when, as here, WMATA fails to issue a final decision on claims pending for several months, and there exists no specific date by which the contracting officer has agreed to perform the contractual duty to issue a final decision. WMATA's

---

[8] WMATA argues that, assuming "Transdev could rewrite the Contract to include a 'deemed denial' concept under the Contract Disputes Act, Transdev fails the test for a deemed denial" because "only nineteen days passed between Transdev's submission of its August 7 claim and its Notice of Appeal and Complaint" (WMATA mot. at 4 (citing compl. ¶¶ 17-18)). As we have held, however, both of appellant's claims were submitted to WMATA long before August 7, 2020 (SOF ¶¶ 7, 10-11, 16, 18).

failure to issue a decision within a reasonable time authorizes Transdev to seek review of its claims in this forum.

## CONCLUSION

We have jurisdiction to consider Transdev's consolidated appeals. WMATA's motion to dismiss for lack of jurisdiction is denied. WMATA is ORDERED to file its answer to appellant's complaint within 30 days of receipt of this decision. In addition, the parties are ORDERED to confer and file a joint report with the Board within 30 days of receipt of this decision, setting forth the status of this appeal, including a proposed schedule for discovery and a statement whether they wish to resolve these appeals though (1) an oral hearing (Board Rule 10); (2) submission on the record (Board rule 11); or Alternative Disputes Resolution (ADR) (Board Rule Addendum II).

Dated: January 25, 2021

DAVID B. STINSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

18

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62654, 62655, Appeals of Transdev Services, Inc., rendered in conformance with the Board's Charter.

Dated:  January 25, 2021

<div style="margin-left:50%;">

*for* Tammye D. Abbott

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

</div>